UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

v.

BRIAN FETTNER,

                        Defendant,

LISELOTTE SANDBERG and
KATHY M. MICALI,

                        Relief Defendants.

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission") alleges as follows:

### SUMMARY

1. This action involves unlawful trading in the securities of G&K Services, Inc. ("G&K") prior to an August 16, 2016 announcement that Cintas Corporation ("Cintas") had reached an agreement with G&K to purchase all of G&K's outstanding common stock for a substantial premium over the stock's then publicly-traded price. While the business combination was being negotiated, and before it had been publicly announced, Brian Fettner ("Fettner" or "Defendant"), based on material, nonpublic information that he had obtained in breach of a duty of trust and confidence to a life-long friend, purchased G&K stock in a brokerage account of his ex-wife, Relief Defendant Liselotte Sandberg, and in a brokerage account of a former girlfriend,

Relief Defendant Kathy M. Micali (collectively "Relief Defendants"). Fettner, based on the material, nonpublic information that he had obtained in breach of a duty of trust and confidence to a life-long friend, also persuaded others to purchase shares of G&K common stock.

2. By engaging in the conduct described above, Fettner violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], and unless enjoined will continue to engage in transactions, acts, practices, and courses of business similar to those alleged in this complaint.

3. The Commission seeks a final judgment enjoining Fettner from future violations of these same provisions of law; ordering Fettner to pay a civil monetary penalty; and ordering each of the Relief Defendants to disgorge the illicit gains she individually received, together with prejudgment interest thereon.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A(a)(1), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1(a)(1), and 78aa].

5. Fettner made use of the means and instrumentalities of interstate commerce or of the mails, or of a facility of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein. Venue is proper in this District pursuant to Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], because certain of the acts or transactions constituting the violations of the federal securities laws alleged herein occurred within the Southern District of Florida, including that Fettner placed a purchase order for G&K common stock while he was in Boca Raton, Florida.

## DEFENDANT

6. Defendant Brian Fettner, age 51, is a United States citizen who resides in

2

Henderson, Nevada.

## RELIEF DEFENDANTS

7. Relief Defendant Liselotte Sandberg, age 50, resides in Boca Raton, Florida. She is the ex-wife of Defendant Fettner. Fettner purchased G&K stock in Sandberg's brokerage account.

8. Relief Defendant Kathy M. Micali, age 41, resides in Henderson, Nevada. She is a former girlfriend of Defendant Fettner. Fettner purchased G&K stock in Micali's brokerage account.

## RELATED ENTITIES

9. G&K was a Minnesota corporation, headquartered in Minnetonka, Minnesota. It provided branded identity uniforms and facility products and services for rent and purchase. During the relevant time, G&K's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78*l*(b)] and was listed on the Global Select Market of The NASDAQ Stock Market LLC under the symbol "GK." G&K was acquired by Cintas, and is now G&K Services, LLC, a wholly-owned subsidiary of that corporation. The business combination was completed on March 21, 2017.

10. Cintas is a Washington corporation with its headquarters in Cincinnati, Ohio. It provides businesses with such products and services as uniforms, floor care, restroom supplies, first aid and safety products, fire extinguishers and testing, and safety and compliance training. Cintas' common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78*l*(b)] and is listed on the Global Select Market of The NASDAQ Stock Market, LLC under the symbol "CTAS."

## FACTUAL ALLEGATIONS

11. Officers of Cintas approached G&K in December 2015 about a possible business combination. Talks broke off in January 2016, but resumed in May 2016 when Cintas submitted a revised offer to G&K.

12. The Senior Vice President, Secretary, and General Counsel of Cintas (the "General Counsel") was one of only a few Cintas senior officers that were aware of and participated in the negotiations with G&K during this time.

13. In mid-June 2016, G&K provided the General Counsel with a draft nondisclosure and standstill agreement for his review. The General Counsel took home a folder that included that document and a few other merger-related documents. The folder was labeled with the code name for the prospective merger and was kept on the desk in the General Counsel's home in a room that served as the General Counsel's home office and den. On Monday, June 20, 2016, the General Counsel executed the nondisclosure agreement on behalf of Cintas.

14. Fettner was a long-time friend of the General Counsel. They attended middle school and high school together and remained close friends thereafter. They have stayed in each other's homes multiple times over the years. Whenever Fettner visited Cincinnati, he stayed at the General Counsel's home, even if Fettner was in town to visit his parents.

15. On Tuesday, June 14, 2016, Fettner came to Cincinnati to play in a charity golf tournament with the General Counsel. Fettner stayed at the General Counsel's home, and the two played several rounds of golf over the next four days.

16. Early on the morning of June 15, Fettner went into the General Counsel's den to change into his golf shoes. While there, Fettner saw the folder with the merger documents on the desk and read at least some of the draft nondisclosure agreement between Cintas and G&K.

17. Fettner said nothing to his friend about having seen the merger documents in his house, and the two left for the golf course.

18. Later that day, on the basis of what he had learned from the merger documents, Fettner used a mobile device to purchase 4,000 shares of G&K common stock in a brokerage account of his ex-wife (Sandberg). The shares had an aggregate cost of just over $300,000. The next day, Fettner spent $160,000 to purchase another 1,500 shares of G&K in her account.

19. The charity golf tournament ended on Saturday June 19. The next morning Fettner flew to Las Vegas and later that day spent $235,000 to purchase yet another 3,100 shares of G&K in his ex-wife's account. On June 21, Fettner spent an additional $52,000 to purchase another 700 shares of G&K in her account.

20. Fettner was not designated as having authority to trade in his ex-wife's account, but in reality he was the only one who ever traded in the account. She allowed Fettner to make all the trading decisions and to execute the trades in her account.

21. Fettner regularly had lunch with a girlfriend when he was home in Henderson, Nevada. On Monday June 27, 2016, the girlfriend purchased 300 shares of G&K common stock at an aggregate cost of $21,855. The girlfriend purchased the shares because Fettner persuaded her to do so. Fettner had a history of providing financial advice to the girlfriend, and she had an understanding with Fettner that he would reimburse her if she lost money because of his trading advice.

22. On June 29, 2016, Fettner's father purchased 2,000 shares of G&K common stock at an aggregate cost of approximately $149,000. His father purchased the shares because Fettner persuaded his father to make the purchase.

23. On July 22, Fettner purchased 200 shares of G&K common stock in a brokerage

5

account of a former girlfriend (Micali), at an aggregate cost of $16,000. As with his ex-wife's account, Fettner was not designated as having authority to trade in his former girlfriend's account, but he is the only one who traded in it. The former girlfriend also had the understanding that Fettner would reimburse her if she lost money on a trade in her account based on his trading.

24. On July 25, 2016, Fettner purchased an additional 300 shares of G&K common stock in his ex-wife's account, at an aggregate cost of $24,300.

25. Fettner did not purchase G&K stock in any account of his own. He did not receive proceeds from any of the G&K trades he placed or from any of the G&K trades he persuaded others to place. Fettner did not inform the General Counsel about any of the G&K stock purchases that he made, or that he persuaded others to make.

26. On August 16, 2016, prior to the opening of U.S. financial markets, G&K and Cintas announced that the companies had entered into an Agreement and Plan of Merger, pursuant to which Cintas would acquire G&K for $97.50 in cash per share of G&K common stock.

27. On the day of the announcement, G&K common stock closed at $96.70 per share, up approximately 17.7% from a closing price of $82.30 the previous day.

28. The aggregate amount of illicit profits from unlawful trades that Fettner placed, or persuaded others to place, was at least $250,000.

## CLAIM FOR RELIEF

29. Paragraphs 1 through 28 are re-alleged and incorporated by reference herein.

30. Fettner, knowingly or recklessly, by use and means or instrumentalities of interstate commerce or of the mails or a facility of a national securities exchange, in connection with the purchase or sale of G&K securities, directly or indirectly, employed devices, schemes,

or artifices to defraud, and engaged in acts, practices, or courses of business which would operate as a fraud or deceit upon a person by purchasing and persuading others to purchase G&K securities while in possession of material, nonpublic information that he surreptitiously obtained by examining confidential transaction documents while a trusted guest in the General Counsel's home, in breach of his duty of trust and confidence to his long-time friend.

31. By reason of the foregoing, Fettner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

32. Fettner's ex-wife received profits from the illicit G&K trades that Fettner placed in her brokerage account. Fettner's ex-wife has no legitimate claim to those profits.

33. Fettner's former girlfriend received profits from the illicit G&K trades that Fettner placed in her brokerage account. Fettner's former girlfriend has no legitimate claim to those profits.

**RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

 A. permanently restraining and enjoining Fettner from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5];

 B. ordering Fettner to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

 C. ordering Relief Defendant Sandberg and Relief Defendant Micali to each disgorge the profits she individually received from Fettner's illicit conduct, together with prejudgment interest thereon; and

D. granting such other and further relief as the Court may deem just, equitable, and necessary.

Respectfully Submitted.

May 7, 2019

By: *(signature)*

Christopher G. Margand
Senior Counsel
Special Bar No. A5502526
Direct Dial: (202) 551-4556
E-mail margandc@sec.gov

David Frohlich
Assistant Director
D.C. Bar No. 425928
Direct Dial: (202) 551-4963
E-mail: frohlichd@sec.gov

Attorneys for Plaintiff
**U.S. Securities and Exchange Commission**
100 F Street, N.E.
Washington, DC 20549
Telephone: (202) 551-6000
Facsimile: (202) 772-9286

8